UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF KAYLA RENEA MILLER,

                Plaintiff,                      Civil Case No. 17-12506
                                                  Honorable Linda V. Parker

v.

ANTHONY STEWART, *et al.*,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 12 & 27)

This lawsuit arises from the death of Kayla Renea Miller ("Ms. Miller") while an inmate at the Women's Huron Valley Correctional Facility under the custody of the Michigan Department of Corrections ("MDOC"). Plaintiff Estate of Kayla Renea Miller, Mary Sanders, as Personal Representative ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and pursuant to the Michigan Wrongful Death Act, § 600.2922(6) ("MWDA"). Plaintiff names eighteen Defendants in the Complaint filed August 2, 2017: (1) MDOC; (2) Women's Huron Valley Correctional Facility; (3) Anthony Stewart, Warden; (4) Heidi E. Washington, Director; (5) Bruce Curtis, Assistant Deputy Director; (6) Sonal Patel, Deputy Warden-Housing; (7) David Johnson, Deputy Warden-Custody; (8) Dr. Theodore

Suh, Past Medical Director; (9) Pam Friess, Health Unit Manager; (10) MDOC

Officer Brittany Lorraine Shanks; (11) MDOC Officer Tiffany Iris Heath; (12)

MDOC Officer Dominique Linette Reeber-Romero; (13) MDOC Officer Linda

Sue Tackett; (14) Kelly McDonell, LPN; (15) Courtney Paquette, LPN; (16)

Michelle Geyman, LPN; (17) Wanda Miles, LPN; and (18) Debbysue Detloff,

LPN (collectively "Individual Defendants") in their individual and official

capacities.  (ECF No. 1.)

Presently before the Court are MDOC Defendants' Motion to Dismiss, filed

on October 24, 2017 (ECF No. 12) and Defendants' Duncan (Friess), Heath,

Reeber-Romero, and Paquette's Motion to Dismiss, filed on January 11, 2018.

(ECF No. 27.)  Defendant Geyman filed a Notice of Joinder/Concurrence to the

latter motion to dismiss on February 6, 2018.  (ECF No. 37.)  Plaintiff has not filed

a response to either motion[1].  For the reasons that follow, the Court grants

Defendants' motions.

## I.     Factual and Procedural Background

On August 11, 2014, Ms. Miller was sentenced to two concurrent

sentences:15-168 months for uttering and publishing and 12-48 months for larceny

---

[1] Pursuant to Local Rule 7.1(e)(1)(B), "[a] response to a dispositive motion must
be filed within 21 days after service of the motion."  Although Plaintiff sought and
the Court granted an extension of time to file a response to the second motion to
dismiss, there is no record of a response.

in building.  (ECF No. 1 at Pg ID 9.)  Upon sentencing, Ms. Miller was immediately committed to the authority of MDOC.  Plaintiff alleges that Ms. Miller had a history of substance abuse, which Defendants should have known because of Ms. Miller's previous convictions for possession of narcotics and marijuana, one of which was as recent as August 11, 2014.  Also, Plaintiff alleges that Defendants should have been aware of Ms. Miller's drug abuse because she was participating in a drug treatment program until she was removed from said program.  Plaintiff asserts that when Defendants removed Ms. Miller from the program they interfered with her serious medical need for medical care in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments when they removed her from the drug treatment program.  (*Id*. at Pg ID 9.)

Plaintiff asserts that it is well-known that visitors, guards, and inmates smuggle drugs into the facility.  (*Id.* at Pg ID 10.)  Specifically, Plaintiff stated if Defendants had been monitoring Plaintiff's calls, a recorded phone call between John Lingle and Ms. Miller would have revealed that Mr. Lingle planned to bring Ms. Miller drugs to his next visit.  Although cameras and several officers are in the visitation area, visitors and inmates are subject to pat downs, and inmates are further subjected to body searches, Mr. Lingle managed to deliver heroin to Ms. Miller on July 9, 2015 and heroin and other drugs on July 16, 2015.  (*Id.*)

Shortly after Mr. Lingle's visit on July 16, 2015, Ms. Miller retired to her cell and either injected heroin with a medical syringe or ingested the heroin through her nostrils. (*Id.* at Pg ID 11.) Plaintiff alleges that despite scheduled cell counts at 5am, 11am, 4pm, 9pm, and 1am, the officer or officers responsible for the cell counts failed to confirm Ms. Miller's whereabouts between the time she retired to her cell and when her body was discovered on July 16, 2015 sometime after 6pm. (*Id.*)

Around 6pm on July 16, 2015, fellow inmate Amanda Marie Bennett went to check on Ms. Miller, but there was no response from her cell, and the door and shutters were closed. (*Id.*) When Ms. Bennett received no response, she sought the assistance of Officer Shanks but was unsuccessful. (*Id.*) Ms. Bennett later returned to Ms. Miller's cell and after, again, hearing no response and receiving no assistance from Officer Shanks, Ms. Bennett let herself into Ms. Miller's cell, where she discovered Ms. Miller in what appeared to be a drug-induced state. (*Id.*) Ms. Bennett then called to Officer Shanks for assistance, at which point she called for backup. (*Id.* at Pg ID 12.)

When Officer Shanks observed Ms. Miller's state, she immediately had a panic attack and was unable to provide any assistance. (*Id.*) Officer Heath arrived and began to give Ms. Miller chest compressions. (*Id.*) Defendants McDonnell, Paquette, Geyman, Miles, and Detloff were also present. (*Id.*) According to

Plaintiff, Ms. Miller was never given Naloxone, a drug used to counter the effects of opioids during overdose, which works within two to five minutes. (*Id.* n.2.) On July 16, 2015, Ms. Miller was pronounced dead.

Mary Sanders mother and Personal Representative of the Estate of Kayla Renea Miller brought this § 1983 action on August 2, 2017. (ECF No. 1.) In response to Plaintiff's Complaint, Defendants filed two motions to dismiss based on Eleventh Amendment immunity, qualified immunity, and state law immunity. Plaintiff did not file a response to either motion. (*See* ECF Nos. 12 & 27.) On November 7, 2017, Plaintiff voluntarily dismissed Dr. Suh. (ECF No. 14.)

## II.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.    Applicable Law & Analysis

Defendants (1) MDOC, (2) Stewart, (3) Washington, (4) Curtis, (5) Patel, (6) Johnson, (7) Shanks, (8) Tackett, (9) McDonnell, and (10) Miles filed a motion

to dismiss on October 24, 2017. (ECF No. 12.) Defendants argue that they are entitled to dismissal pursuant to Eleventh Amendment immunity, qualified immunity, and state law immunity. On January 11, 2018, Defendants (1) Friess, (2) Heath, (3) Reeber-Romero, and (4) Paquette filed a motion to dismiss on the same grounds. (ECF No. 27.) Defendant Geyman joined and concurred in the January 11, 2018 motion. (*See* ECF No. 37.)

## A. Eleventh Amendment Immunity

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although on its face the Eleventh Amendment prohibits only suits brought against a state by "Citizens of another State" or "Citizens or Subjects of any Foreign State," the Supreme Court has long construed the Amendment to protect states from suits filed by their own citizens in federal court. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1 (1980).

Eleventh Amendment immunity extends to states and their agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143 (1993); *Abick v. State of Mich.*, 803 F.2d 874, 876 (6th Cir. 1986). Defendants assert, and

Plaintiffs do not dispute that Michigan Department of Corrections is a state agency[2] to which the Eleventh Amendment applies. *See Estate of Ritter v. Univ. of. Mich.*, 851 F.2d 846, 848 (6th Cir. 1988). Under the Eleventh Amendment, a state and its agencies are immune from actions for damages and injunctive relief unless immunity is validly abrogated by Congress or expressly waived by the state. *See Seminole Tribe of Florida*, 517 U.S. at 54-55; *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Neither Congress nor the State of Michigan have waived Eleventh Amendment immunity for suits brought under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985) (citations omitted); *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010). As such, Plaintiff's § 1983 claim against MDOC is subject to dismissal.

Eleventh Amendment immunity also extends to suits against state officials sued for monetary damages based on their conduct in their official capacities because such lawsuits are not suits against the officials themselves but in fact are suits against the office of the officials, i.e. against the state itself. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

---

[2] The Complaint also includes as a Defendant the Women's Huron Valley Correctional Facility, which is under the control of the Michigan Department of Corrections. For purposes of this Order, "Michigan Department of Corrections" or "MDOC" includes Women's Huron Valley Correctional Facility.

Therefore, the Court also concludes that Plaintiff's § 1983 claim against the individual defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed. Defendants do not contend that the individual defendants are entitled to Eleventh Amendment immunity to the extent they are sued in their individual capacities, as they in fact are not. *See, e.g., Hardin v. Straub*, 954 F.2d 1193 (6th Cir. 1992) (explaining the difference between official and individual capacity suits and that a state officer sued in the latter capacity cannot advance Eleventh Amendment immunity as a defense).

### B.    Section 1983 Claim

Plaintiff asserts §1983 claims for violations of her rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. "Section 1983 establishes 'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994)). A plaintiff asserting a §1983 claim must show: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

As an initial matter, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must

be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013). Under the facts and circumstances of this case, the Eighth Amendment is more appropriate to apply given allegations of a failure to address a serious medical need. Because the Court finds Plaintiff's claim is more appropriately analyzed under the Eighth Amendment, the Court will decline to analyze Plaintiff's claims under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Further, Plaintiff does not make any substantive claims regarding the Fourth, Fifth, Sixth, and Fourteenth Amendments.

Defendants argue that Plaintiff's claims against Defendants Stewart, Washington, Curtis, Patel, Johnson, Tackett, Reeber-Romero, and Friess must be dismissed because they were not personally involved with the incident and a *respondeat superior* theory is inapplicable under a § 1983 claim. To establish personal liability under § 1983, the plaintiff must show that *each* defendant charged "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Stated differently, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[T]he personal responsibility requirement is satisfied if the official 'acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional

10

deprivation occurs at her direction or with her knowledge or consent." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (6th Cir. 1993).

The Sixth Circuit "has held that § 1983 liability must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Luttrell*, 199 F. 3d 295, 300 (1999). Supervisory liability attaches only where

> the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id*. (quoting *Hays v. Jefferson Cnty.*, 668 F. 2d 869, 874 (6th Cir. 1982)). "Plaintiff ha[s] to prove that they did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour v. Univ. of Tenn.*, 159 F. 3d 199, 206 (6th Cir. 1998); *Peatross v. City of Memphis*, 818 F. 3d 233, 241-42 (6th Cir. 2016) ("We have long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor. However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation") (internal citations omitted). Where a supervisor also is a policymaker, care must be taken to distinguish an individual-capacity claim against the supervisor and an official-capacity or municipal claim,

as they turn on two different legal principles.  *See Essex v. Cnty. of Livingston*, 518

F. App'x 351, 355 (6th Cir. 2013).

In *Essex*, the court explained the distinction between these two legal

principles:

> For individual liability on a failure-to-train or supervise theory, the
> defendant supervisor must be found to have "'encouraged *the specific*
> incident of misconduct or in some other way directly participated in
> it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)
> (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A
> plaintiff must demonstrate that the defendant supervisor "'at least
> implicitly authorized, approved, or knowingly acquiesced in the
> unconstitutional conduct of the offending officers.'" *Id.* (quoting
> *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to
> establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d
> 725, 751 (6th Cir. 2006).

*Essex*, 518 F. App'x at 355 (emphasis added).  Because MDOC and the Individual

Defendants, in their official capacity, have been dismissed based on Eleventh

Amendment immunity, the Court will not address any official capacity or

municipal liability claims.

**1. Defendants Stewart, Washington, Curtis, Patel, and Johnson**

Plaintiff alleges deprivations of Ms. Miller's constitutional rights under the

Eighth Amendment.  Plaintiff specifically alleges that all of the Individual

Defendants were deliberately indifferent to Ms. Miller's serious medical need

regarding her drug abuse, including removing her from the drug treatment program

and failing to administer Naloxone.  However, nowhere in the Complaint does

Plaintiff mention any direct involvement of Defendants Stewart, Washington, Curtis, Patel, and Johnson, who all happen to occupy a supervisory role within the facility.  Specifically, Plaintiff does not refer to these Defendants in the Complaint beyond the case caption and their occupation.  Plaintiff's claims as to these Defendants are simply based on their supervisory role rather than their personal involvement, which is inappropriate under a § 1983 claim.  Further, Plaintiff does not allege any specific conduct these Defendants engaged in that would hold them liable under a theory of supervisory liability, including implicitly authorizing, approving, or knowingly acquiescing in any alleged unconstitutional conduct relating to Ms. Miller's removal from the drug treatment program and the handling of her overdose.  *Essex*, 518 F. App'x at 355.  Therefore, the Court concludes that Plaintiff failed to state a claim upon which relief can be granted against Defendants Stewart, Washington, Curtis, Patel, and Johnson.

### 2. Defendants Tackett, Reeber-Romero, and Friess

Defendants Tackett, Reeber-Romero and Friess are MDOC officers.  As stated above, Plaintiff is required to allege the conduct of each Defendant that was unconstitutional.  However, Plaintiff does not mention Defendants Tackett, Reeber-Romero, and Friess in the Complaint beyond the case caption and their occupation within the facility.  Plaintiff fails to allege any personal involvement, either directly or indirectly, of any of these Defendants relating to Ms. Miller's

removal from the drug treatment program and the handling of her overdose. Plaintiff's allegations as to these Defendants are conclusory and fail to meet the *Iqbal-Twombly* standard.  Therefore, the Court is dismissing Defendants Tackett, Reeber-Romero, and Friess.

### C.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff does not allege any unconstitutional behavior.  Qualified immunity protects state actors who perform discretionary functions from being sued under §1983 from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Humphrey v. Mabry*, 482 F. 3d 840, 847 (6th Cir. 2007).  The determination of whether a government official is entitled to qualified immunity is a two-step inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac Cnty*, 606 F. 3d 240, 247 (6th Cir. 2010) (internal quotation marks and citations omitted).

The Court notes "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.  Although . . . 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F. 3d 421, 433 (6th Cir. 2015) (internal citations omitted).  However, the Sixth Circuit has "held that . . . if the defense is properly raised prior to discovery, the district court has a duty to address it." *Summers v. Leis*, 368 F. 3d 881, 886 (6th Cir. 2004).  "The plaintiff also must allege with particularity 'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.' . . ." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal citations omitted).  Plaintiff "bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Border v.Trumbull County Bd. Of Comm'rs*, 414 F. App'x 831, 835 (6th Cir. May 17, 2011) (unpublished).

Under the Eighth Amendment, prison conditions can constitute cruel and unusual punishment if those conditions lead to "deprivations of essential food, medical care, or sanitation." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).  A prison official violates the Eighth Amendment when two conditions are met:

> First, the deprivation alleged must be, objectively, "sufficiently serious," a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must

show that he is incarcerated under conditions posing a substantial risk of serious harm. The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety."

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Stated differently, the United States Supreme Court has held that prison officials can be liable under the Eighth Amendment if the "official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Nonetheless, an officer may "not escape liability if the evidence show[s] that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843. Further, plaintiff must prove more than ordinary negligence to succeed on a claim for deliberate indifference. *Id.* at 835.

The Court has already dismissed a number of the Defendants for Plaintiff's failure to allege personal involvement: Defendants MDOC, Stewart, Washington, Curtis, Patel, Johnson, Tackett, Reeber-Romero, and Friess. The Court will now address the remaining Defendants: Shanks, Heath, McDonnell, Paquette, Geyman, Miles, and Detloff.

Defendants argue that there is no evidence that Defendants knew of and disregarded a serious medical need. Plaintiff alleges that Ms. Bennett made numerous attempts to get Officer Shanks' attention and assistance prior to anyone knowing Ms. Miller had overdosed. Although Ms. Bennett initially could not get Officer Shanks' attention, Plaintiff does not allege that Officer Shanks knew of any serious health need when Ms. Bennett asked for her assistance. Further, when Officer Shanks became aware that Ms. Miller had a serious medical need, she called for assistance. Unfortunately, Officer Shanks had a panic attack and was unable to assist. In any event, in not assisting, there is no allegation that Officer Shanks had a culpable state of mind that rose to the level of a constitutional violation.

Next, Officer Heath, who is not medical staff, responded to Ms. Miller's state by giving her chest compressions. The Sixth Circuit has stated that "[w]here a prison official actually knew of a substantial health risk to an inmates' health, he nonetheless may be free of liability if he reasonably responded to it, even though the harm ultimately was not averted." *Border*, 414 F. App'x at 836 (quoting *Harrison v. Ash, C.O.*, 539 F.3d 510, 519 (6th Cir. 2008). Here, Officer Heath's response to Ms. Miller's state was to give chest compressions because presumably Ms. Miller was not breathing. Although Officer Heath's actions did not prevent Ms. Miller's death, it was a reasonable response to Ms. Miller's state of health.

17

Finally, Plaintiff alleges that Defendants McDonnell, Paquette, Geyman, Miles, and Detloff were present in Ms. Miller's cell when Defendant Heath were attempting to give Ms. Miller chest compressions. However, there is no allegation that any of these Defendants engaged in any unconstitutional conduct. Plaintiff further argues that Defendants should have administered Naloxone in response to Ms. Miller's condition. However, according to Defendants, at the time of Ms. Miller's drug overdose, the nurses at the prison could not administer Naloxone without a prescription. Defendants argue that since the incident, "[i]n 2016, Michigan passed a Naloxone standing order law. This allows pharmacists to dispense Naloxone without an individual prescription and without identifying a particular patient." (ECF No. 27 at Pg ID 158.) Because the drug was unavailable at the time of Ms. Miller's drug overdose, and the nurses at the facility were not authorized to administer the drug without a doctor's order, any allegation that prison officials failed to administer the drug fails.

The Court recognizes the seriousness of Plaintiff's allegations. However, for purposes of a § 1983 violation, Plaintiff's Complaint fails. There is no objective evidence that Defendants knew Ms. Miller was using drugs in the facility or that they suspected she was using drugs. To this point, there is no evidence that Defendants removed Ms. Miller from the program while she was still suffering from drug addiction. Although Plaintiff refers the Court to Ms. Miller's previous

convictions, that is not a sufficient basis for Defendants to have been aware of a serious medical need. Moreover, it is unclear if the named Defendants were present during the visitations when Mr. Lingle smuggled drugs or suspected Mr. Lingle of smuggling drugs, were responsible for monitoring the visitation cameras during Mr. Lingle's visits, or were responsible for the body searches and pat downs during those visits. Also, it is unclear if the named Defendants were responsible for any of the cell counts during which Ms. Miller was unaccounted. Although some of Plaintiff's broader claims could potentially be attributed to MDOC, this federal suit is barred because of Eleventh Amendment immunity.

Because Plaintiff has failed to allege that there were any constitutional violations, the Court is dismissing Plaintiff's federal claims.

### D.  Supplemental Jurisdiction

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Section 1367 provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim … if
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The court's discretion, however, is circumscribed by considerations of "'judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "After a [Rule] 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255 (citations omitted) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

Because the Court has dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Renfro v. Cuyahoga County Dep't of Human Services*, 884 F.2d 943, 944 n.2 (6th Cir. Sept. 18, 1989) ("Since the district court properly dismissed the federal claim it was also appropriate to dismiss the pendent state claims."); *see also Keller v. City of Cleveland*, No. 13-cv-91, 2014 U.S. Dist. LEXIS 83993, at *22 (E.D. Tenn. Jun. 20, 2014) ("When all federal claims have been dismissed, the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal, remand to state court.") (citing *Gamel v. City of Cincinnati*, 625

F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996))).

Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.     Conclusion

In summary, the Court is **GRANTING** Defendants' motions to dismiss (ECF No. 12 & 27); and

**IT IS ORDERED** that Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 14, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 14, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager